UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,
*ex rel.*
DOLOS ANALYTICS, LLC, a
Delaware limited liability company,

Case No.: 24-cv-23436-JB

Plaintiff,

vs.

MATTHEW BROWN & ASSOCIATES,
INCORPORATED, a Florida corporation,

Defendant.
_____/

## AMENDED *QUI TAM* COMPLAINT

Plaintiff, the United States of America ("United States"), *ex rel.* Dolos Analytics, LLC, a Delaware limited liability company ("Relator"), through its undersigned counsel, hereby files this Amended *qui tam* Complaint against Defendant Matthew Brown & Associates, Incorporated, a Florida corporation, ("Defendant" or "Brown"), and in support thereof states as follows:

### INTRODUCTION

1. This *qui tam* action alleges violations of the Federal False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.* ("FCA") arising from Defendant's fraudulent misrepresentations presented to the United States Small Business Administration ("SBA") and lender acting on the SBA's behalf, in its application to obtain and have forgiven over a hundred thousand dollars in loans under the Paycheck Protection Program.

2. Defendant is affiliated with Tee-Off-Temps, Inc., a Florida corporation and other parties because it is commonly owned and controlled by Matthew Brown, or a third party or parties

controls or has the power to control the Defendant and other parties. Defendant and its affiliates employ over 500 employees and generate millions of dollars in annual revenue.[1]

3. Defendant deceived the SBA into lending it and forgiving over one hundred thousand dollars by knowingly misrepresenting its number of employees combined with its affiliates to con the SBA into accepting its eligibility for loans under the applicable SBA small businesses standards.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this *qui tam* action brought under the FCA, 31 U.S.C. §§ 3279, *et seq.*, pursuant to 28 U.S.C. §§1331 and 1345, and 31 U.S.C. §§ 3732(a) and 3730(b).

5. Relator is an "original source" and otherwise authorized to maintain this action in the name of the United States and as contemplated by the FCA, 31 U.S.C. §§ 3729-33. Relator has or will make all the necessary voluntary disclosures to the United States and filed all documents necessary with the United States as required by 31 U.S.C. § 3730(b)(2).

6. There has been no public disclosure of the "allegations or transactions" in this Complaint under Section 3730(e) of the FCA. The specific facts, circumstances, and allegations of Defendant' violations of the FCA have not been publicly disclosed in a civil suit or administrative civil money penalty proceeding in which the United States is already a party. Moreover, Relator is an "original source" of the allegations in this Complaint under 31 U.S.C. § 3730(e) of the FCA, even had such a public disclosure occurred.

7. The Court has personal jurisdiction over Defendant because 31 U.S.C. § 3732(a) authorizes nationwide service of process, and because Defendant has minimum contacts with the

---

[1] Pursuant to Fed. R. Civ. P. 15(a)(1)(B), Relator files this Amended Complaint as a matter of course, prior to any Defendant serving a responsive pleading, to dismiss Tee-Off-Temps, Inc. with the consent of the United States.

United States, can be found in, and transact or have transacted business in the Southern District of Florida. Further, the acts proscribed by 31 U.S.C. § 3729(a) and described in this Complaint occurred in the Southern District of Florida and elsewhere in the United States.

8.      The Defendant does business in the Southern District of Florida and throughout the United States and either directly or through its affiliates made or caused to be made false statements to the SBA to obtain and have forgiven over a hundred thousand dollars in a PPP loan, and accordingly, is subject to the jurisdiction of this Court.

9.      Venue lies under 28 U.S.C. § 1391(b), (c) and 31 U.S.C. § 3732(a) because the Southern District of Florida is a district in which the Defendant can be found or transact business, and an act proscribed by 31 U.S.C. § 3729 occurred within this district.

## PARTIES

10.     Plaintiff/Relator, Dolos Analytics, LLC, a Delaware limited liability company, brings this action on behalf of the United States, the real party in interest. Relator is a team of data analytics professionals specialized in gathering data from public and private sources and developing models to identify suspicious activity in such data sets. As it pertains to this matter, Relator gathered data related to all applicants of the SBA's Paycheck Protection Program from public and private sources and designed analytical models that identified suspicious activity related to the applicants' data. Thereafter, Relator's professional team manually reviewed the suspicious activity and identified various fraudulent statements made by Defendant to the SBA as set forth herein. Relator has direct and independent knowledge of the factual allegations contained in this *qui tam* Complaint and brings this action as an "original source," as that term is defined by the FCA.

11. Defendant Matthew Brown & Associates, Incorporated is a Florida corporation with its principal place of business located at 3180 SE Slater Street, Stuart, Florida 34997. Brown transacts business and has extensive business contacts within Miami-Dade County, Florida. At all times material hereto, Brown directly or indirectly through its subsidiaries and affiliates knowingly misrepresented that it was an eligible small business in its SBA PPP loan application to qualify for, receive, and ultimately have forgiven over one hundred thousand dollars in a PPP loan.

## FACTUAL ALLEGATIONS

### I. The Paycheck Protection Program

12. On March 27, 2020, Congress enacted the Paycheck Protection Program ("PPP") as part of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in response to the COVID-19 crisis. Under the PPP, the SBA lent, guaranteed, and ultimately forgave hundreds of billions of dollars to businesses and other organizations.

13. The PPP enabled borrowers to rapidly obtain low-interest loans from private lenders to pay employees and certain expenses to alleviate the unprecedented challenges presented by the COVID-19 crisis.

14. Pursuant to Section 1102 of the CARES Act, the SBA guaranteed 100% of the PPP loans to incentivize private lenders across the country to participate in making such loans expeditiously.

15. Section 1106 of the CARES Act made the loans eligible for partial or full forgiveness subject to the borrower's certification that the funds were used within a specific period to maintain payroll, make rent or mortgage payments, and pay other specified business expenses.

16. To qualify for a first draw PPP loan, the borrower had to acknowledge the PPP program rules and make certain affirmative certifications to be eligible to obtain a PPP loan.

## II.   The PPP First Draw Application Process

17.   To expedite the distribution of funds to borrowers, the SBA authorized lenders to rely on the borrowers' certifications regarding their eligibility for the loan, loan amount, use of funds, supporting documentation, and eligibility for loan forgiveness.

18.   The SBA delegated authority to private lenders to underwrite and approve the PPP loans. To obtain a PPP first draw loan, an eligible business had to complete and submit a PPP first draw loan application compliant with SBA Form 2483 online through its private lender's platform. The PPP first draw loan application required the borrower to certify its eligibility to obtain the PPP loan, including, *inter alia*, that the borrower, combined with its affiliates, had, i.) 500 or fewer employees; ii.) met the SBA's industry size standards for the industry in which it operates (if applicable), or iii.) met the SBA's alternative size standard.

   a.   The SBA's industry size standards are generally stated in number of employees or average annual receipts, represents the largest size that a business (including its subsidiaries and affiliates) may be to remain classified as a small business for SBA programs.[2]

   b.   The SBA's alternative size standard provides that a business can qualify for a PPP loan as a small business if as of March 27, 2020, it (1) had a maximum tangible net worth of not more than $15 million, and (2) had an average net income after Federal income taxes (excluding any carry-over losses) of not more than $5 million for the last two fiscal years before the date of the application.

---

[2] SBA Table of Small Business Size Standards (available at: https://data.sba.gov/dataset/c17e8870-fa85-48a4-8887-9a51b7503711/resource/d89a5f17-ab8e-4698-9031-dfeb34d0a773/download/sba-table-of-size-standards_effective-august-19-2019_v0.xlsx).

19. Once the borrower submitted its PPP first draw loan application to a private lender, the lender processed the PPP first draw loan application. If the lender approved the borrower's application, the lender submitted its own application compliant with SBA Form 2484 to the SBA certifying that the borrower certified its eligibility to receive a PPP first draw loan. Upon receipt of the lender's application the SBA approved and guaranteed the loan and assigned it a loan number.

20. Upon receipt of the SBA's guarantee, the lender disbursed the loan to the borrower using its own funds and notified the SBA that the loan was disbursed. Upon receipt of that notification, the SBA paid the lender a processing fee.

### III. The PPP Loan Forgiveness Application

21. Borrowers were eligible to apply for forgiveness of the funds borrowed and spent on specified business expenses during the eight to twenty-four week covered period following each loan disbursement.

22. Borrowers could apply for loan forgiveness at any time before the loan's maturity date by completing and submitting SBA Form 3508, or one of its variations depending on circumstances. Pursuant to SBA Form 3508, borrowers were required to certify that they were eligible for loan forgiveness. Once the SBA approved the forgiveness application, or a portion thereof, it would remit the forgiveness amount to the lender and the borrower would be released from its obligations under the loan.

### IV. Brown's Fraudulent PPP Loan Application and Forgiveness Application

23. Brown submitted a PPP loan application compliant with SBA Form 2483 to Farmers State Bank of Alto Pass Illinois ("FSB") falsely certifying its eligibility to receive a PPP loan. Brown certified that it had 19 employees. Brown falsely certified that combined with its

6

affiliates, it i.) had 500 or fewer employees; ii.) met the SBA's industry size standards for the industry in which it operates, or iii.) met the SBA's alternative size standard.

24. FSB processed and approved Brown's PPP application in the amount of $191,500.00. Relying on Brown's certifications, FSB submitted a PPP loan application compliant with SBA Form 2484 to the SBA certifying that Brown had certified that it was eligible to receive said PPP loan.

25. On or about April 27, 2020, and relying on Brown's false certification, the SBA approved and guaranteed the PPP loan and issued Brown's loan number 3699377203. FSB disbursed the PPP loan to Brown and notified the SBA of such disbursement, at which point the SBA paid FSB a processing fee.

26. Brown applied for forgiveness of its PPP loan by submitting, or causing to be submitted, SBA Form 3508 to the SBA. On or about April 8, 2021, Brown's PPP loan, plus accrued interest, was forgiven in the amount of $193,283.84.

## V. The Defendant is not a Qualified Small Business

27. Defendant and other parties are affiliated entities because they control or have the power to control one another, or a third party or parties control or have the power to control the Defendant and other parties.

28. To be eligible small businesses to receive PPP loans, Defendant along with all of its affiliates, had to:

    a. have 500 or fewer employees;

    b. have $30,000,000.00 or less in total annual receipts pursuant to the applicable SBA industry size standard; or

    c. meet the SBA's alternative size standard by having a maximum tangible net worth of not more than $15 million, and an average net income after Federal income taxes of not more than $5 million.

29. Defendant, Tee-Off-Temps, Inc., and their other affiliated entities employ more than 500 employees, generate well over $30,000,000.00 in annual revenue, and have a tangible net worth in excess of $15 million and an average net income of more than $5 million.

## VI.  The False Claims Act

30. The False Claims Act, 31 U.S.C. §§ 3729–3733, is the primary tool with which the United States combats fraud against it. The Supreme Court has held that the False Claims Act's provisions must be construed broadly to reach "all types of fraud, without qualification, that might result in financial loss to the Government." *United States v. Neifert-White*, 390 U.S. 228, 232 (1968).

31. The FCA provides that a person or entity that knowingly presents or causes to be presented a false or fraudulent claim for approval or makes or causes to be made a false or fraudulent claim that is material to a false or fraudulent claim is liable to the United States for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted, plus three times the amount of damages which the United States sustains due to the conduct. 31 U.S.C. § 3729(a); 28 C.F.R. § 85.5(a) (adjusting penalties assessed after January 30, 2023 to a minimum of $13,508 and maximum of $27,018).

32. The terms "knowing" and "knowingly" are defined by the FCA to mean that, with respect to the subject false information, a person has actual knowledge of the falsity, acts in deliberate ignorance of the truth or falsity, or acts in reckless disregard of the truth or falsity, and proof of specific intent to defraud is not required. 31 U.S.C. § 3729(b).

33. As defined in the FCA, the term "claim" means any request or demand for money or property that is presented or caused to be presented to the United States; or that is made to a contractor, grantee, or other recipient, if the money is to be spent or used on behalf of the United States or to advance a United States program or interest, so long as the United States provides or has provided any portion of the subject money or property or will reimburse such contractor, grantee, or other recipient for any portion of the subject money or property. *Id.*

34. The term "material" is defined in the False Claims Act to mean having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property. *Id.*

## CAUSES OF ACTION

### Count I: False or Fraudulent Claims (31 U.S.C. § 3729(a)(1)(A))

(Brown)

35. Relator re-alleges and incorporates in this Count I, Paragraphs 1 through 34 of this *qui tam* Complaint.

36. Defendant Brown knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(A), specifically, that Brown was eligible for a PPP loan and to have such PPP loan forgiven.

37. Because of Brown's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $13,508.00 and not more than $27,018.00 for each violation.

### Count II: False Statements (31 U.S.C. § 3729(a)(1)(B))

(Brown)

38. Relator re-alleges and incorporates in this Count II, Paragraphs 1 through 34 of this *qui tam* Complaint.

39. Defendant Brown knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim, and/or to get the United States to pay or approve false or fraudulent claims, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(B).

40. Because of Brown's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $13,508.00 and not more than $27,018.00 for each violation.

### Count III: Reverse False Claims (31 U.S.C. § 3729(a)(1)(G))

(Brown)

41. Relator re-alleges and incorporates in this Count III, Paragraphs 1 through 34 of this *qui tam* Complaint.

42. Defendant Brown knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the United States, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the United States, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(G).

43. Because of Brown's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $13,508.00 and not more than $27,018.00 for each violation.

## PRAYER FOR RELIEF

44. Wherefore, Relator, demands judgment in its favor as follows:

   a. Against Defendant Brown under Counts I, II, and III under the FCA, for the amount of the United States' damages, trebled as required by law, plus civil penalties in an amount between $13,508.00 and $27,018.00 for each and every false claim as required by law, together with all such further relief may be just and proper; and

   b. Such other relief as this Court may deem just and proper, together with interest and costs of this action.

## DEMAND FOR JURY TRIAL

Relator demands a jury trial as to all issues so triable.

Dated: December 9, 2024

    Respectfully submitted,

    ORTEGA GROUP, PLLC

    Dick M. Ortega, Esq.
    Florida Bar No.: 113054
    *Attorneys for Relator*
    1108 Ponce de Leon Blvd
    Coral Gables, Florida 33134
    Telephone: (305) 315-2725
    dortega@ortegagroup.law